IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO: 7:25cr1187 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZACHARY CHAPMAN, | ) | 18 U.S.C. § 2 |
| a/k/a "Blacc Zacc" | ) | 18 U.S.C. § 924(c) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 924(j) |
| | ) | 18 U.S.C. § 981 |
| | ) | 18 U.S.C. § 1951(a) |
| | ) | 18 U.S.C. § 1958 |
| | ) | 18 U.S.C. § 1959(a)(1) |
| | ) | 18 U.S.C. § 1959(a)(5) |
| | ) | 18 U.S.C. § 1962(d) |
| | ) | 18 U.S.C. § 1963 |
| | ) | 21 U.S.C. § 853 |
| | ) | 21 U.S.C. § 881 |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | **SEALED INDICTMENT** |
| | ) | |

## INDICTMENT

## COUNT ONE
### (RICO Conspiracy)

The Grand Jury for the District of South Carolina charges, at all times relevant to this

Indictment, that:

1

OCT 14 2025 PM4:30
RCV'D - USDC G'VILLE SC

## Introduction

### The Dirty Money Entertainment Enterprise

1.    Dirty Money Entertainment ("DME") was a violent gang based in the District of South Carolina that engaged in acts involving murder, drug trafficking, robberies, and other criminal activity from a time unknown, but no later than June 2020, until the date of this indictment. Members and associates of Dirty Money Entertainment often wore jewelry and clothing that bore the organization's initials ("DME") or the logo of the organization, a circular medallion with a dollar sign in the middle, accompanied by a marijuana leaf on top.

2.    Dirty Money Entertainment, including its leaders, members, and associates, constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    **ZACHARY CHAPMAN** was the founder and leader of DME. As the leader, **CHAPMAN** directed all DME activities, but he occasionally delegated authority to other members and associates to perform certain tasks.

4.    DME operated out of Columbia, South Carolina from a series of homes owned by **ZACHARY CHAPMAN** and others. The gang based many of its operations out of a house located in Blythewood, South Carolina. The enterprise used airports in South Carolina, Georgia, North Carolina, and California to conduct its drug trafficking operations.

5.    Some members and associates of DME also were associated with various Crip sets and sometimes used symbols and language that corresponded with the Crips. Examples included

2

incorporating the term "on crip" into some of their communications with fellow DME members and refusing to write the letters "ck" because they believed that it stands for "crip killa." Instead, members and associates substituted "cc" for "ck" in their writing and communication.

6.      Members and associates of the enterprise had loosely defined roles as couriers, drivers, drug dealers, weapon suppliers, organizers, and enforcers. Members and associates of DME wore medallions, clothing, and tattoos to demonstrate their affiliation with the enterprise. Members and associates of DME often incorporated the term "Dirty" into their street names and tattoos.

7.      Members and associates of DME often included the number "48" in lyrics to music they recorded and on clothing and jewelry they wore to represent the "48 area" in Columbia, South Carolina, which encompasses five neighborhoods—Starlight, Bluff Estates, Eastway Park, Arthurtown, and Washington Park—where numerous members and associates of the enterprise were from.

8.      DME had a set of rules to maintain discipline and ensure criminal acts committed on behalf of the enterprise were executed properly. These rules prohibited cooperation with law enforcement, limited affiliations outside of the enterprise, required repayment of debts owed to DME leaders, prohibited members and associates from diverting the enterprise's funds or drugs, and imposed price controls and exclusive distribution arrangements on drug trafficking operations.

9.      Members and associates of DME retaliated against individuals who they perceived to have disrespected or threatened the enterprise's standing, reputation, or drug trafficking operations. Members and associates of DME were expected to commit criminal acts on behalf of the enterprise.

10.     The commission of criminal acts, particularly violent acts directed at rivals, increased the respect accorded to members and associates of DME. Conversely, if a member or associate declined to commit criminal acts or failed to retaliate when the enterprise was disrespected, that member or associate would lose respect or otherwise be punished.

### Purposes of the Enterprise

11.     The purposes of the DME enterprise included, but were not limited to, the following:

a.      Enriching members and associates of the enterprise through drug trafficking and robberies;

b.      Committing crimes of violence to promote and enhance the reputation of the enterprise and to keep rival gang members in fear of the enterprise;

c.      Providing protection and assistance to members and associates who committed crimes on behalf of the enterprise; and

d.      Hindering, obstructing, and preventing law enforcement from identifying, apprehending, and prosecuting participants in the enterprise's criminal activity.

### Means and Methods of the Enterprise

12.     Among the means and methods by which members and associates of DME conducted and participated in the conduct of the affairs of the enterprise included, but were not limited to, the following:

a.      Members and associates generated income by agreeing to, and engaging in, illegal activities under the protection of the enterprise, including drug trafficking, robbery, and other illegal activities;

4

b. Members and associates acquired, shared, carried, and used firearms for protection and to commit crimes, including retaliatory acts of violence toward those they perceived had disrespected the enterprise;

c. Members and associates committed violent crimes to promote and enhance the reputation of the enterprise and to keep rival gang members in fear of the enterprise;

d. Members and associates acquired vehicles to commit and facilitate other crimes, including providing transportation to and from crimes; and

e. Members and associates of the enterprise used coded language and other means of communication to avoid detection and apprehension by law enforcement authorities.

### The Racketeering Conspiracy

13. Beginning on a date unknown, but since at least in or about June 2020, and continuing until the date of this indictment, in the District of South Carolina and elsewhere,

**ZACHARY CHAPMAN,**

and others known and unknown to the Grand Jury, being persons employed by and associated with Dirty Money Entertainment, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully and knowingly combine, conspire, confederate, and agree with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of:

a. multiple acts involving:

5

        i.     murder, chargeable under South Carolina Code §§ 16-3-10, 16-3-29, 16-1-40, and 16-17-410;

        ii.    robbery, chargeable under South Carolina Code §§ 16-11-325, 16-11-330, 16-1-40, and 16-17-410;

    b.    multiple acts indictable under:

        i.     Title 18, United States Code, Section 1958 (relating to the use of interstate commerce facilities in the commission of murder-for-hire);

        ii.    Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion); and

        iii.   multiple offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

14.    It was further a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

15.    In furtherance of the conspiracy, and to affect the object thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of South Carolina and elsewhere.

16.    Beginning at a date unknown, but no later than in or about June 2020, and continuing up through and including the date of this indictment, members and associates of the enterprise, including **ZACHARY CHAPMAN**,

Co-Conspirator 1, and others both known and unknown to the grand jury, conspired to traffic marijuana to raise funds on behalf of DME.

6

17.     From in or about June 2020 until on or about the date of this indictment,

███████████████████████████████████████████████████████████████

Co-Conspirator 1, and others known and unknown to the grand jury, transported large amounts of

cash from Columbia, South Carolina to Los Angeles, California for the purpose of purchasing

quantities of marijuana on behalf of DME.

18.     On or about June 8, 2020, Co-Conspirator 1 attempted to transport approximately

$18,000 in cash from Charlotte, North Carolina to Los Angeles, California to buy marijuana on

behalf of DME.

19.     On or about August 5, 2020, Co-Conspirator 1 possessed with intent to distribute a

quantity of marijuana.

20.     On or about September 3, 2021, ███████████████ notified **ZACHARY**

**CHAPMAN** and ████████████████ that his diamond-encrusted "DME" medallion—

representing his affiliation with DME—had been stolen by C.W., a member of a rival gang known

as "Raq Livin."

21.     On or about September 3, 2021, members and associates of DME, including

**ZACHARY CHAPMAN**, ███████████████████████████████████████

████████ Co-Conspirator 1, and others known and unknown to the grand jury, met to discuss the

theft of the DME medallion and to plan retaliation for the theft.

22.     On or about September 3, 2021, **ZACHARY CHAPMAN** directed ███████████

██████████████████████████████████████████ and others known and unknown to the

grand jury, to carry-out a drive-by shooting of C.W.

23.     On or before September 3, 2021, Co-Conspirator 1 gave ███████████████

one or more firearms on behalf of **ZACHARY CHAPMAN**.

7

24. On or about September 3, 2021, **ZACHARY CHAPMAN** ordered Co-Conspirator 2 to provide firearms for use in the drive-by shooting of C.W. to ⬛⬛⬛ and an individual unknown to the grand jury.

25. On or about September 3, 2021, ⬛⬛⬛ gave a firearm to another DME member to commit the drive-by shooting of C.W.

26. On or about September 3, 2021, ⬛⬛⬛ ⬛⬛⬛ and others known and unknown to the grand jury, armed themselves with multiple firearms and obtained a vehicle to commit the drive-by shooting of C.W.

27. On or about September 3, 2021, ⬛⬛⬛ ⬛⬛⬛ and others known and unknown to the grand jury, drove to a location where the group believed C.W. was present.

28. On or about September 3, 2021, Co-Conspirator 1 provided simultaneous information and updates about the drive-by shooting to **ZACHARY CHAPMAN**.

29. On or about September 3, 2021, ⬛⬛⬛ ⬛⬛⬛ and others known and unknown to the grand jury, committed a drive-by shooting targeting C.W. and members of "Raq Livin."

30. On or about September 3, 2021, ⬛⬛⬛ shot his driver in the arm during the drive-by shooting.

31. On or about September 3, 2021 ⬛⬛⬛ ⬛⬛⬛ and others known and unknown to the grand jury, abandoned multiple firearms and fled the scene of the drive-by shooting.

32. On or about September 8, 2020, Co-Conspirator 1, and others known and unknown to the grand jury, transported approximately $30,000 in cash from Columbia, South Carolina to

8

Los Angeles, California for the purpose of purchasing quantities of marijuana for DME as directed

by **ZACHARY CHAPMAN**.

33.     On or about September 9, 2021,

were ordered by **CHAPMAN** to retrieve the stolen DME medallion from C.W., who was staying

at a local hotel.

34.     On or about September 9, 2021

armed themselves with multiple firearms, obtained a vehicle, and drove to C.W.'s location.

35.     On or about September 9, 2021,

identified C.W.'s location. As they approached C.W                    fired multiple rounds

until his gun jammed.

36.     On or about September 9, 2021, **ZACHARY CHAPMAN** kicked

out of DME because        ailed to kill C.W.

37.     In or about September 2021, **ZACHARY CHAPMAN** ordered "a hit" on and

offered a bounty for the killing of C.W.

38.     On or about September 22, 2021, **ZACHARY CHAPMAN** sent

to meet with

39.     In or about late September or early October of 2021,                    coordinated

with an associate to find someone from outside Columbia, South Carolina to commit a murder for

**ZACHARY CHAPMAN** in exchange for monetary compensation.

40.     In or about October of 2021, the associate conveyed the offer from **ZACHARY**

**CHAPMAN** and            to            who agreed to kill C.W. in exchange for

monetary compensation.

9

41.     On or about October 20, 2021, ███████ traveled from Aiken, South Carolina, to Columbia, South Carolina, to meet with ███████ at a Columbia area hotel.

42.     On or about October 20, 2021, Javon Hamilton attempted to lure C.W. to an apartment complex in Columbia, South Carolina. After C.W. did not appear, ███████ ███████ rescheduled the murder for October 21, 2021.

43.     Prior to October 21, 2021, **ZACHARY CHAPMAN** provided ███████ with a Ruger-5.7 pistol and requested that it be used to kill C.W.

44.     On or about October 21, 2021, ███████ exchanged coded text messages with an associate about the plan to murder C.W. Hamilton gave authorization for ███████ to murder C.W.

45.     On or about October 21, 2021, ███████ traveled from Aiken, South Carolina, to an apartment complex in Columbia, South Carolina to murder C.W.

46.     On or about October 21, 2021, at approximately 10:30 p.m. ET ███████ shot C.W. multiple times at close range—leaving him dead in the parking lot.

47.     On or about October 21, 2021, ███████ received a report that ███████ had murdered C.W.

48.     On or about October 21, 2021, ███████ traveled to a Columbia area hotel to meet ███████

49.     On or about October 21, 2021, ███████ paid ███████ thousands of dollars in cash and gave Glover the Ruger-5.7 pistol that **ZACHARY CHAPMAN** had previously provided.

50.     On or about October 21, 2021, ███████ disposed of the 9mm pistol used in the murder.

51. From on or about October 21, 2021, to on or about October 22, 2021, **ZACHARY CHAPMAN** and ▮▮▮▮▮▮▮ exchanged calls and coded text messages after news reports of C.W.'s murder began to circulate.

52. On or about October 21, 2021, ▮▮▮▮▮▮ attempted to delete his text messages with C.W.

53. On or about October 21, 2021, **ZACHARY CHAPMAN** attempted to delete text messages with ▮▮▮▮▮▮ regarding the murder.

54. On or about October 26, 2021, ▮▮▮▮▮ was paid additional compensation for the murder of C.W. by ▮▮▮▮▮

55. On or about November 21, 2021, Co-Conspirator 1 knowingly, intentionally, and unlawfully possessed with intent to distribute a quantity of marijuana.

56. On or about November 24, 2021, Co-Conspirator 1 knowingly, intentionally, and unlawfully possessed with intent to distribute a quantity of marijuana.

57. On or about January 12, 2022, ▮▮▮▮▮▮▮▮ followed a marijuana trafficker from Greenville-Spartanburg International Airport to a nearby gas station. Once there, ▮▮▮▮▮▮▮ robbed the marijuana trafficker at gunpoint and stole multiple suitcases containing marijuana.

58. On or about January 12, 2022, **ZACHARY CHAPMAN** told ▮▮▮▮▮▮▮▮ that the trafficker they robbed was a gang member and directed them to return the marijuana.

59. On or about January 13, 2022, **ZACHARY CHAPMAN** negotiated the return of a portion of the stolen marijuana to the owner.

11

60. On or about January 14, 2022, ██████████████ made a payment to the victim of the robbery.

61. On or about January 25, 2022, ██████████████ and another DME member drove to Greenville-Spartanburg International Airport, donned masks, and attempted to rob four individuals who were trafficking approximately fifty pounds of marijuana. ████████ and the other DME member exchanged gunfire with the drug traffickers.

62. On or about January 25, 2022, ██████████████ called **ZACHARY CHAPMAN** to report the shootout. **CHAPMAN** then directed ████████ and the other DME member to come to his home.

63. On or about January 25, 2022, ██████████████ and the other DME member drove to **ZACHARY CHAPMAN's** house in Blythewood, South Carolina.

64. On or about January 25, 2022, **ZACHARY CHAPMAN** directed ██████████ and the other DME member to destroy and dispose of evidence from the shooting at the airport.

65. On or about July 20, 2022, ██████████████ transported a large quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed by **ZACHARY CHAPMAN**.

66. On or about August 8, 2022, ██████████████ transported a large quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed by **ZACHARY CHAPMAN**.

67. On or about August 18, 2022, ██████████████ and other members and associates of DME transported a large quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed by **ZACHARY CHAPMAN**.

12

68.     On or about September 1, 2022,                          transported a large quantity

of marijuana from Los Angeles, California to Columbia, South Carolina as directed by

**ZACHARY CHAPMAN**.

69.     On or about September 21, 2022,                          and other members and

associates of DME transported a large quantity of marijuana from Los Angeles, California to

Columbia, South Carolina as directed by **ZACHARY CHAPMAN**.

70.     On or about September 29, 2022, members and associates of DME transported a

large quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed

by **ZACHARY CHAPMAN**.

71.     On or about October 12, 2022,                          transported a large quantity

of marijuana from Los Angeles, California to Columbia, South Carolina as directed by

**ZACHARY CHAPMAN**.

72.     On or about November 9, 2022,                          transported a large quantity

of marijuana from Los Angeles, California to Columbia, South Carolina as directed by

**ZACHARY CHAPMAN**.

73.     On or about November 16, 2022, members and associates of DME transported a

large quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed

by **ZACHARY CHAPMAN**.

74.     On or about December 2, 2022, members and associates of DME transported a large

quantity of marijuana from Los Angeles, California to Columbia, South Carolina as directed by

**ZACHARY CHAPMAN**.

75. On or about January 3, 2023,                    transported a large quantity of

marijuana from Los Angeles, California to Columbia, South Carolina as directed by **ZACHARY**

**CHAPMAN**.

## Special Sentencing Factor

76. As part of his agreement to conduct and participate in the conduct of the affairs of

the DME enterprise through a pattern of racketeering activity, **ZACHARY CHAPMAN**

committed the following act: On or about October 21, 2021, in the District of South Carolina,

**ZACHARY CHAPMAN** did knowingly and intentionally kill C.W., with malice aforethought,

and did aid and abet the same, in violation of South Carolina Code §§ 16-3-10, 16-1-40, and 16-

3-20.

In violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
### (Attempted Murder in Aid of Racketeering)

The Grand Jury further charges that:

77. At all times relevant to this Indictment, DME, including its leaders, members, and

associates, as more fully described in Paragraphs One through Twelve of Count One above, which

are realleged and incorporated by reference as though set forth fully herein, constituted an

enterprise as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of

individuals associated in fact that engaged in, and the activities of which affected, interstate and

foreign commerce. The enterprise constituted an ongoing organization whose members functioned

as a continuing unit for a common purpose of achieving the objectives of the enterprise.

78. At all times relevant to this Indictment, the Dirty Money Entertainment enterprise,

including its leaders, members, and associates, engaged in racketeering activity, as defined in Title

14

18, United States Code, Sections 1959(b)(1) and 1961(1); that is: multiple offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

79.    On or about September 3, 2021, in the District of South Carolina, **ZACHARY CHAPMAN**, █████████████████████████████████████████████████████

█████████████████ and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in Dirty Money Entertainment, an enterprise engaged in racketeering activity, aiding and abetting one another, did knowingly and intentionally attempt to murder C.W., in violation of South Carolina Code §§ 16-3-29 and 16-1-40.

In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## COUNT THREE
### (Use, Carry, and Discharge of a Firearm During and In Relation to a Crime of Violence)

The Grand Jury further charges that:

80.    On or about September 3, 2021, in the District of South Carolina, **ZACHARY CHAPMAN**, █████████████████████████████████████████████████████

█████████████████ and others known and unknown to the Grand Jury, while aiding and abetting each other, did knowingly use and carry a firearm during and in relation to a crime of violence for which each may be prosecuted in a court of the United States, to wit, Attempted Murder in Aid of Racketeering charged in Count Two of this Indictment and did brandish and discharge said firearm in furtherance of said crime of violence.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(i)-(iii) and 2.

## COUNT FOUR
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury further charges that:

15

81. The allegations set forth in Paragraphs 77 and 78 of Count Two are realleged and incorporated herein.

82. In or about September 2021, through in or about October 2021, in the District of South Carolina, **ZACHARY CHAPMAN,** █████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from DME, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining, and increasing position in DME, an enterprise engaged in racketeering activity, did knowingly conspire, confederate, and agree with each other, to murder C.W., in violation of South Carolina Code §§ 16-3-10 and 16-17-410.

In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

### COUNT FIVE
### (Murder in Aid of Racketeering)

The Grand Jury further charges that:

83. The allegations set forth in paragraphs 77 and 78 of Count Two are realleged and incorporated herein.

84. On or about October 21, 2021, in the District of South Carolina, **ZACHARY CHAPMAN,** █████████████████████████████ and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from DME, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining, and increasing position in DME, an enterprise engaged in racketeering activity, did knowingly conspire, confederate, and

16

agree with each other, to murder C.W., in violation of South Carolina Code §§ 16-3-10 and 16-17-410.

    In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT SIX
### (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)

The Grand Jury further charges that:

85.    Beginning at a time unknown to the grand jury, but no later than in or about September 2021, and continuing to on or about October 26, 2021, in the District of South Carolina and elsewhere, the Defendants, **ZACHARY CHAPMAN**,

did unlawfully, willfully, and knowingly use and caused to be used a facility of interstate commerce, that is, a cellular telephone, with intent that the murder of C.W. be committed in violation of the laws of the State of South Carolina, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value, specifically, United States currency, with the death of C.W. resulting.

    In violation of Title 18, United States Code, Sections 1958 and 2.

## COUNT SEVEN
### (Use, Carry, and Discharge of a Firearm During and In Relation to a Crime of Violence)

The Grand Jury further charges that:

86.    On or about October 21, 2021, in the District of South Carolina, **ZACHARY CHAPMAN**, and others known and unknown to the Grand Jury, while aiding and abetting each other, did knowingly use and carry a firearm during and in relation to a crime of violence for which each may be prosecuted in a court of the United States, to wit: Murder in Aid of Racketeering, as set forth in Count Five of this Indictment and did brandish and discharge said firearm in furtherance of said crime of violence.

17

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(i)-(iii) and 2.

## COUNT EIGHT
### (Causing Death Through Use of a Firearm)

The Grand Jury further charges that:

87.     On or about October 21, 2021, in the District of South Carolina, **ZACHARY CHAPMAN**, ████████████████ and others known and unknown to the Grand Jury, in the course of committing a violation of Title 18, United States Code, Sections 924(c) and 2, as alleged in Count Seven of this Indictment, incorporated herein, caused the death of C.W. through the use of a firearm, which killing constituted murder, as defined in Title 18, United States Code, Section 1111(a), and did aid and abet commission of said offense.

In violation of Title 18, United States Code, Sections 924(j)(1) and 2.

## COUNT NINE
### (Conspiracy to Interfere with Commerce by Threats or Violence)

The Grand Jury further charges that:

88.     Beginning at a time unknown to the grand jury, and continuing until on or around January 25, 2022, in the District of South Carolina, **ZACHARY CHAPMAN**, and others known to the Grand Jury, knowingly and intentionally did combine, conspire, agree and have tacit understanding with each other, to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as the terms commerce and robbery are defined in Title 18, United States Code, Section 1951(b), in that **CHAPMAN** and others known to the Grand Jury did unlawfully plan to take property consisting of marijuana that had traveled in interstate commerce from the person and presence of individuals known to the Grand Jury, against their will by means of actual and threatened force, violence and fear of injury to said individuals.

In violation of Title 18, United States Code, Section 1951(a).

18

## FORFEITURE ALLEGATION

The Grand Jury further finds that:

RICO CONSPIRACY:

Upon conviction of the offense alleged in Count One of this Indictment charging RICO

Conspiracy in violation of Title 18, United States Code, Section 1962(d), Defendants, **ZACHARY**

**CHAPMAN,** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇ shall forfeit to the United States, pursuant to Title 18, United States Code,

Section 1963:

1.      any interest acquired and maintained in violation of Title 18, United States Code,

Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18,

United States Code, Section 1963(a)(1);

2.      any interest in, security of, claims against, and property and contractual rights of

any kind affording a source of influence over, the enterprise which the defendant(s) has

established, operated, controlled, conducted, and participated in the conduct of, in violation of

Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are

subject to forfeiture to the United States pursuant to Title 18, United States Code, Section

1963(a)(2); or

3.      any property constituting and derived from any proceeds which the defendant(s)

obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States

Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title

18, United States Code, Section 1963(a)(3).

FIREARM OFFENSES:

Upon conviction for felony violation of Title 18, United States Code, Section 924 as

19

charged in this Indictment, the Defendants, **ZACHARY CHAPMAN**, ███████████

███████████████████████████████████████████████████████████

███████████████ shall forfeit to the United States all of the Defendants'

rights, title, and interest in and to any firearms and ammunition (as defined in 18 U.S.C. § 921)

involved in or used in any knowing violation of 18 U.S.C. § 924, or violation of any other criminal

law of the United States, or intended to be used in a crime of violence.

ROBBERY/MURDER-FOR HIRE:

Upon conviction for violation of Title 18, United States Code, Sections 1951 and 1958, the

Defendants, **ZACHARY CHAPMAN**, ███████████████████████████ shall

forfeit to the United States any property, real or personal, constituting, derived from or traceable

to proceeds the Defendants obtained, directly or indirectly, as a result of such offenses, and any

firearms used or intended to be used to facilitate the offenses.

PROPERTY:

Pursuant to 18 U.S.C. §§ 924(d)(1), 981(a)(1)(C) and 1963, 21 U.S.C. § 853 and 881, and

28 U.S.C. § 2461(c), the property which is subject to forfeiture for the violations charged in this

Indictment includes, but is not limited to, the following:

A.    Jewelry:

Gold and Diamond Dirty Money Entertainment pendant
Owners: **ZACHARY CHAPMAN** ███████████████

B.    Firearms:

(1)    Glock 17, 9mm pistol with (3) magazines and (44) 9mm rounds of
ammunition
Serial Number: BUXB891
Seized from: ███████████████

(2)    Ruger 57, 5.7mm pistol with magazine and (14) 5.7mm rounds of
ammunition

20

Serial Number: 64182830
Seized from:

## C. Cash Proceeds / Forfeiture Judgment:

A sum of money equal to all proceeds the Defendants obtained, directly or indirectly, from the offenses charged in this Indictment, and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to their violation of Title 18.

### SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture to the United States, as a result of any act or omission of a Defendant,

(1) Cannot be located upon the exercise of due diligence;

(2) Has been transferred or sold to, or deposited with a third party;

(3) Has been placed beyond the jurisdiction of the Court;

(4) Has been substantially diminished in value; or

(5) Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), and Title 18, United States Code, Section 982(b)(1), [incorporating Title 21, United States Code, Section 853(p)], to seek forfeiture of any other property of the said Defendant up to the value of the above forfeitable property.

Pursuant to Title 18, United States Code, Sections 924(d)(1), 981(a)(1)(C) and 1963, and Title 21, United States Code, Sections 853 and 881, and Title 28, United States Code, Section 2461(c).

21

A     TRUE     Bill

REDACTED

FOREPERSON

BRYAN P. STIRLING
United States Attorney
District of South Carolina

DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
U.S. Department of Justice

CHRISTOPHER B. SCHOEN, #11421SC
Assistant United States Attorney
District of South Carolina

JARED A. HERNANDEZ, #48404FL
Trial Attorney
U.S. Department of Justice